**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| CYNOSURE, LLC, <br><br>    Petitioner, <br><br>v. <br><br>SHAYA MEDICAL P.C. INC. and WISSAM SHAYA, <br><br>    Respondents. | ) <br> ) <br> ) <br> ) <br> ) Case No. 22-mc-91275 <br> ) <br> ) Related to: <br> ) <br> ) (CASE NO.: 8:21-cv-00831 <br> ) in the United States District Court for the <br> ) Central District of California) <br> ) |

**NON-PARTY CYNOSURE, LLC'S MOTION TO QUASH DEPOSITION SUBPOENA AND FOR PROTECTIVE ORDER**

Non-party Cynosure, LLC ("Cynosure") moves to quash a deposition subpoena and for a protective order barring the same deposition pursuant to Federal Rules of Civil Procedure 45 and 26, respectfully. The deposition subpoena was issued in connection with a matter pending in the United States District Court for the Central District of California, *Balboa Capital Corp. v. Shaya Med. P.C. Inc., et. al*, Case No. 8:21-cv-00831 where Balboa Capital Corporation ("Balboa") seeks outstanding payments from Shaya Medical P.C. Inc. and Dr. Wissam Shaya (collectively, "Shaya") due under an Equipment Finance Agreement ("Balboa EFA") between the two parties. Cynosure markets and sells the SculpSure Laser System ("SculpSure") that is the subject of the Balboa EFA, but it is not a party to the Balboa EFA. Nonetheless, on May 25, 2022—only 22 days before the close of discovery in *Balboa v. Shaya Med. et. al*— Shaya served a 30(b)(6) deposition subpoena ("Deposition Subpoena") on Cynosure, seeking nearly identical information previously obtained through written discovery. Cynosure respectfully submits this motion seeking entry of: (1) an

1

order quashing Shaya's Deposition Subpoena, which commands the deposition of Cynosure on June 8, 2022, at 12 pm EST, and (2) a protective order barring the same.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

The Deposition Subpoena should be quashed and a protective order should be entered barring the same because the discovery sought through the deposition is irrelevant, overly broad and unduly burdensome, and seeks information that is more readily obtained through other, less burdensome means. The case at issue is a simple debt collection action on a loan contract between Shaya and Balboa EFA. Cynosure is not a signatory to that contract. And the Court supervising the action has already rejected Shaya's contention that Cynosure operated as a joint venture with Balboa EFA, dismissing Cynosure from the case. Nonetheless, in an attempt to avoid dispute, Cynosure already produced documents to Shaya in response to a document subpoena in February covering the same subject matter. Shaya should not be permitted to impose further cost and burden on non-party Cynosure through a deposition, particularly where the requested testimony is entirely irrelevant to the litigation or is duplicative of document discovery already produced. Accordingly, Cynosure respectfully requests that this Court grant the relief requested herein.

**II.    BACKGROUND**

    **A.    Litigation Between Balboa and Shaya in the United States District Court for the Central District of California**

Cynosure markets and sells industry-leading energy-based aesthetic and medical treatment systems, including the SculpSure Non-Invasive Body Contouring Device (the "SculpSure"). Shaya purchased a SculpSure device from Cynosure in Jacksonville, Florida pursuant to a written contract with Cynosure on August 23, 2019, Pineault Decl., Ex. 1. Shaya separately secured financing for its purchase through a third-party financing company, Balboa. Non-party MMP

Capital, Inc. ("MMP"), an independent financial broker, facilitated Balboa's approval of a finance agreement for Shaya's purchase of the SculpSure device. Cynosure is not a party to the finance agreement. Nor is it a party to any contract between Balboa and MMP. Apparently unable or unwilling to pay Balboa under the terms of the EFA, Balboa filed a breach of contract action against Shaya in the Central District of California on March 30, 2021. Pineault Decl., Ex. 2 (hereinafter "Compl.").

On May 12, 2021, Shaya answered Balboa's complaint and filed counterclaims for fraud and rescission, among others, against Balboa and Cynosure.[1] Pineault Decl., Ex. 3. Shaya separately alleged that the Balboa EFA was unconscionable, in part, because Shaya had no other options for financing the device purchase. *Id*. at 10. As part of its effort to bring Cynosure into the litigation, Shaya broadly asserted that Cynosure and Balboa were part of a joint venture, alleging that "under this joint venture, Cynosure would profit due to the sale of a device it could not otherwise sell, and Balboa Capital would profit from receiving significant interest on the money it loaned…" *id*. Counterclaim ¶ 4. The district court rejected those allegations. Indeed, the district court granted Balboa's motion to dismiss Shaya's counterclaim against it in part, finding that Shaya "ha[s] not pled the existence of a joint venture with the requisite particularity" from which it could support a claim of fraud against Balboa. Pineault Decl. Ex. 4 at 6.[2] The court also dismissed Shaya's counterclaims for fraudulent inducement and rescission, leaving only Shaya's declaratory judgment claim that the EFA is not enforceable because it is unconscionable.[3] *Id*. at 11-13.

---

[1] Shaya filed its first amended counterclaim on June 21, 2021, and a second amended counterclaim on July 18, 2021.
[2] *See id.* at 9 (holding that "[a]llegations that two businesses benefited from one another's operations and that one business compensated another for a referral are insufficient to plausibly assert that the two businesses agreed to share the profits flowing from a joint enterprise. As such, [Shaya] ha[s] failed to plead a joint venture.").
[3] The Court granted Shaya leave to amend its Complaint within 14 days of the Court's Order, but Shaya did not amend its Complaint.

On August 5, 2021, Cynosure likewise moved to dismiss Shaya's second amended counterclaim for lack of personal jurisdiction, which was granted on September 7, 2021. Pineault Decl., Ex. 5. In doing so, the court found that Shaya "failed to establish specific personal jurisdiction over Cynosure," finding that Shaya failed to allege facts that Cynosure was a necessary party to the contract dispute. *Id.* Although the court left open the possibility for Shaya to file suit against Cynosure in the proper forum, to date, Shaya has not done so.

### B.    Discovery Requests on Non-Party Cynosure

On February 16, 2022, Shaya served Cynosure with a subpoena requesting the production of documents ("February Subpoena"). Pineault Decl., Ex. 6. The February Subpoena made seventeen document requests regarding: (1) documents related to Shaya's SculpSure purchase, RFP Nos. 1-3, 10, 13-14; (2) documents related to Shaya's financing of its SculpSure purchase, RFP Nos. 4-5, 11, 16; (3) documents related to any agreements or payments made between Cynosure, Balboa and non-party MMP Capital, Inc. ("MMP"), Balboa's financial broker, that are related to Shaya's SculpSure purchase, RFP Nos. 6-9, 15; and (4) documents related to other financing agreements for SculpSure purchases between Cynosure, Balboa, and MMP, RFP Nos. 12, 17.[4]

On March 9, 2022, Cynosure served Shaya with its objections to the February Subpoena. Pineault Decl., Ex. 7  Notwithstanding its objections, in an attempt to avoid dispute, Cynosure conducted a reasonable search for the requested information and produced several documents pursuant to a protective order to preserve the confidentiality of the documents: Cynosure's centrally maintained sales folder for Shaya's purchase of the SculpSure; its centrally maintained invoice reflecting Shaya's purchase of the SculpSure; an email communication with MMP related

4

to Shaya's purchase of the SculpSure that was located after a reasonable search of emails to Cynosure's Accounts Receivable; and Cynosure's February 15, 2019 Finance Program Agreement among Cynosure, MMP, and Financial Pacific Leasing, Inc, a provider of equipment leases.

Now Shaya has served a broad deposition subpoena on Cynosure seeking testimony on the very same four topics of information sought in Shaya's prior document subpoena: (1) information related to Shaya's SculpSure purchase, Topics 5-6; (2) information related to Shaya's financing of its SculpSure purchase, Topic 2; (3) information related to any agreements or payments made between Cynosure, Balboa and non-party MMP, Topics 11-12; and (4) information related to other financing agreements for SculpSure purchases between Cynosure, Balboa, and MMP, Topics 3-4, 7-10. Pineault Decl., Ex. 8. As explained below, these topics are irrelevant and/or unduly burdensome because the discovery can be obtained through less intrusive means, such as the previously produced documents or directly from Balboa.[5]

### III.   ARGUMENT

Federal Rule of Civil Procedure 45(d)(3) provides that, on a timely motion, a court "***must*** quash or modify a subpoena that, *inter alia*, "subjects a person to undue burden." (emphasis added). Courts "balance[] the harm of disclosure against the harm to the other party of restricting discovery" when evaluating whether a subpoena imposes an undue burden. *London-Sire Recs., Inc. v. Doe 1,* 542 F. Supp. 2d 153, 162 (D. Mass. 2008); *see also Vesper Mar. Ltd. v. Lyman Morse Boatbuilding, Inc.*, No. 2:19-CV-00056-NT, 2020 WL 877808, at *1 (D. Me. Feb. 21, 2020) (noting that courts "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it[.]") (citations omitted). A court's weighing of a subpoena's burden includes consideration of whether the information sought is necessary to the

---

[5] The subpoena demanded attendance of the witness on June 8, 2022. To avoid the need for seeking relief on an emergency basis, both parties agreed to continue the date for the deposition pending a decision on this Motion.

5

litigation and whether it is obtainable from any other source. *See id.* Particularly when served on nonparties, the "scope of discovery is not unlimited, and the court must restrict discovery that is 'unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[,]' or is outside the scope of discovery permitted by Rule 26(b)(1)." *Cates v. Zeltiq Asethetics, Inc.*, No. CV 20-MC-91234-NMG, 2020 WL 5517457, at *2 (D. Mass. Sept. 14, 2020) (citation omitted). (quoting Fed. R. Civ. P. 26(b)(2)(C)).

Rule 26(c) also allows a court to issue an order to protect any person from whom discovery is sought from annoyance, oppression, or undue burden or expense by, *inter alia*, forbidding the disclosure of discovery or inquiry into certain matters. The movant must demonstrate good cause for the protective order. *Cates*, 2020 WL 5517457, at *2.

Here, the Deposition Subpoena both seeks discovery that is not necessary to the litigation and that is duplicative and can be obtained from other sources that are far more convenient.

### A.   The Deposition Subpoena is Irrelevant, Overly Broad and Unnecessary to the Litigation between Balboa and Shaya

The Deposition Subpoena is overbroad and unduly burdensome because it seeks testimony that is irrelevant to the litigation.[6] The underlying litigation is a simple breach of contract case between Balboa and Shaya involving a simple question: Did Shaya breach the terms of that contract by failing to make timely payments to Balboa. Compl. at ¶¶ 11-13. Discovery from Cynosure cannot answer that question.

Specifically, Deposition Subpoena Topic 1 covers "[t]he nature of Cynosure's business and its business operations." Cynosure is not a party to the litigation or the underlying contact and; as such, the nature of its business has no bearing on the case. Moreover, Deposition Subpoena Topics 3-4 and 7-10 are grossly overbroad because they seek information far beyond the specific

6

purchase that Shaya made. Topics 3-4 and 9-10 relate to Cynosure's relationship with MMP or Balboa for the financing of SculpSure devices generally. Topics 7-8 similarly seek information on "*[a]ny* contracts, agreements or other arrangements" between Cynosure and Balboa or MMP with regards to the financing of all SculpSure devices in 2019, unrelated to *Shaya's* purchase and financing.[7] *Id.* (emphasis added). Shaya accordingly seeks to subject non-party Cynosure to an untold line of questioning involving the sale of countless SculpSure devices sold over nearly a five-year period, bearing no relevance to Shaya's purchase and financing of the SculpSure device. Indeed, the Deposition Subpoena identifies the relevant time period for the deposition topics as January 1, 2015 to October 31, 2019, a four-year span *before* Shaya's SculpSure purchase. Neither Balboa's Complaint nor Shaya's Answer and surviving Counterclaims point to any remotely relevant conduct that precedes July 2019, when Shaya was first allegedly contacted about SculpSure. *See* Pineault Decl., Ex. 3 at ¶ 24.

Shaya has argued during meet and confers that it seeks this discovery to establish that the Balboa EFA is an unconscionable contract of adhesion because Shaya had no other option as to how to buy the device. But Cynosure customers can pay by cash or credit card; no one is required to finance the SculpSure device at all. *See, e.g.*, Pineault Decl. Ex 1 at 2 (stating that Cynosure accepts payment through Visa, Mastercard, and American Express). In any case, the deposition topics go far beyond what would be necessary to establish whether there were other means to finance the purchase. Even a simple document request for the identities of other finance companies that have financed purchases for Cynosure customers would suffice to establish that Balboa is not the exclusive option.

---

[7] Topics 3, 6, and 10 all relate to non-party MMP Capital Inc. These topics are even further afield as MMP is neither a party to this litigation nor a signatory to the EFA. To the extent that Shaya believes that MMP and Balboa have an exclusive arrangement for the financing of equipment, such discovery is better obtained from Balboa or MMP.

### B. The Deposition Subpoena is Unreasonably Duplicative and Cumulative

To the extent the topics have any limited relevance, discovery can be obtained through less burdensome means. The Subpoena Deposition topics are materially identical to previously served requests for production. Cynosure has already responded to that document subpoena, producing responsive materials located in centralized sources. Specifically, Cynosure produced (1) its centrally maintained sales folder for Shaya's SculpSure purchase (relevant to deposition topic numbers 2, 11-12); (2) its centrally maintained invoice documenting Shaya's purchase of SculpSure (same); (3) an email between Cynosure and MMP related to Shaya's SculpSure purchase found following a "reasonable search of emails to Cynosure's Accounts Receivable" (relevant to deposition Topics 5-6); and (4) and the only agreement between Cynosure and MMP or Balboa in effect at the time of Shaya's purchase (relevant to deposition topic numbers 7-10). As such, Cynosure has already produced documents sufficient to answer any of the deposition topics arguably relevant to this litigation. Shaya should not be permitted to go on a fishing expedition in hopes that it might uncover new evidence to somehow prove its unsupported and speculative theory. *See, e.g.*, *London-Sire Records, Inc. v. Doe I*, 542 F.Supp.2d 153, 175 (D.Mass. 2008) (requiring plaintiffs to prove that subpoena was more than "a mere fishing expedition"); *U.S. v. Gikas*, 112 F.R.D. 198, 200-01 (D.Mass. 1986) (denying motion for pre-trial subpoena where movant failed to show that requests were not a "fishing expedition"); *see also Bunn v. Dash*, No. 2:20-CV-07389-DMG-JC, 2021 WL 4866995, at *5 (C.D.Cal. Aug. 29, 2021) (issuing protective order and quashing subpoenas upon finding that "the Subpoenas are vastly overbroad and constitute a fishing expedition.").

Moreover, the requested information could more readily be obtained from the parties in the litigation. Specifically, Topics 4-5 explicitly call for information related to communications to or

from *Balboa* and Topic 11 calls for information related to payments made from *Balboa*.[8] Clearly then, such information could more readily be sought from Balboa itself. Likewise, Topics 7 and 9, regarding the general relationship between Balboa and Cynosure, could be obtained from Balboa itself.

Finally, Topic 14 calls for "[t]he authentication of documents produced by Cynosure."[9] But Shaya has already agreed that it would be satisfied with a declaration to authenticate Cynosure's prior document production, which Cynosure has already agreed to do.[10]

## IV. CONCLUSION

For the foregoing reasons, Cynosure respectfully requests that this Court enter an order quashing Shaya's Deposition Subpoena and a protective order barring the same deposition.

In the alternative, if this court finds that Shaya's interest in obtaining further discovery from Cynosure outweighs the harms of disclosure, Cynosure requests that the Court order that Shaya reasonably compensate Cynosure for compliance with the Deposition Subpoena pursuant to Rule 45(d)(3)(c).

---

[8] Topic 2 calls for Cynosure's knowledge of and involvement with the financing offered to Shaya. The sales representative involved in Shaya's purchase of the SculpSure device is no longer employed by Cynosure, however. As such, a deposition of Cynosure will not yield any information beyond what is contained in the documents already produced.

[9] Topic 13 calls for "the documents produced by Cynosure in this litigation." Cynosure understands that this topic would similarly be intended to authenticate documents already produced and is thus similarly amenable to a declaration.

[10] Cynosure agreed to submit a declaration authenticating the previously produced documents and sent Shaya a draft declaration on June 6, 2022.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: June 7, 2022 | */s/ Michael J. Pineault* |
|  | Michael J. Pineault (BBO No. 555314) |
|  | **ANDERSON & KREIGER LLP** |
|  | 50 Milk Street, 21st Floor |
|  | Boston, MA 02109 |
|  | T: +1 617.621.6578 |
|  | F: +1 617.621.6619 |
|  | mpineault@andersonkreiger.com |
|  | *Attorney for Cynosure, LLC* |

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

Pursuant to Local Rule 7.1(a)(2), the undersigned counsel certifies that counsel for Petitioner Cynosure conferred with counsel for Respondents regarding this motion. No agreement was reached on the relief sought by Cynosure.

|  |  |
|---|---|
| Dated: June 7, 2022 | */s/ Michael J. Pineault* |
|  | Michael J. Pineault |

### CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2022, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

|  |  |
|---|---|
| Dated: June 7, 2022 | */s/ Michael J. Pineault* |
|  | Michael J. Pineault |